IN THE UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JANET CARLOW | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | CIVIL ACTION NO. 2:12-CV-146 |
| | * | Jury Trial |
| Daniel Rivera, Robert Cramer, | * | |
| Judy Sutton and Mark Cazalas, | * | |
| Defendants | * | |

**PLAINTIFF'S  JANET CARLOW'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION  FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JANET CARLOW, by and through her attorney, Chris McJunkin, and files

Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, and would

show the Court as follows:

INTRODUCTION

Approximately May of 2001, Plaintiff  began working for the Texas Department of Aging

and Disability Services (DADS) as a Clinical Psychologist / Associate Psychologist III at the

Corpus Christi State School.  DADS operates and oversees the CC State School. The Corpus

Christi State School opened in 1970. It is a state supported living center is home to several

hundred people also referred to as residents / consumers and employing approximately 1,000

people.   It is currently called the CC State Supported Living Center. (Ex.1:p.1, sec.1)

The Psychology Dept. is  now called Behavioral Services and is involved in the well being of

the clients who are determined to need services for behavioral problems that put them or others

at risk. The psychologists are  responsible for psychological evaluations for all clients to

determine whether they need serviced which involves Data Collection, Functional Assessments,

1

Behavior Programs, evaluating needs for medication, safety plans, and appropriate levels of supervision. (Ex.1:p.1, sec. 2)

The Corpus Christi State School has a history of abuse and neglect regarding the residents. In about May of 2007, a high profile event occurred which involved a resident suicide.   In September of 2007, Plaintiff spoke out at a City Hall public forum on matters of public concern involving the care of residents at the Corpus Christi State School. Plaintiff and other employees had been  discouraged to attend and speak. Thereafter Plaintiff began to be subjected to retaliatory treatment. (Ex.1:p.2, sec.3, 5)

 In 2009, another high profile event occurred when it was discovered that there was a  fight club at the CC State School where residents would fight  other residents. (Ex 1: p.4,sec.12)

In September of 2010, Plaintiff again spoke out at a Town Hall public forum on matters of public concern involving the care of residents at the Corpus Christi State School. Plaintiff was the only employee speaking out.    The retaliation continued and resulted in Plaintiff not being promoted in October – November 2010.  Defendants terminated Plaintiff on September 30, 2011, alleging that Plaintiff failed to cooperate with an Adult Protective Service investigation on September 13, 2011, knowing that the APS investigator agreed to reset the meeting with Plaintiff to September 14, 2011, and that Plaintiff met with the APS investigator on September 14, 2011, two weeks prior to be terminated for the alleged failure to cooperate.(Ex.1: p.4 sec. 13; Exs. 2,7).

## SUMMARY OF THE ARGUMENT

 Plaintiff establishes factual support for all elements of her  42 USC Sec. 1983 First Amendment retaliation claims for the following adverse employment actions:

1.  2010 Failure to Promote
    Defendant Cramer

2.  September 30, 2011, Termination
    Defendants Rivera, Cazalas, Sutton, Cramer

Plaintiff provides evidence that Plaintiff's First Amendment speech on matters of public concern motivated the adverse employment actions:

    a. Direct evidence of animus
    b. Evidence of Intent
    c. Evidence of pretext, including the falsity of the reason used to terminate Plaintiff

Plaintiff provides evidence that the process resulting in Plaintiff's termination began the first part of September 2011, two weeks after Defendant Sutton was hired on August 15, 2011, that Rivera initiated the allegations against Plaintiff; that the allegations were not going to result in Plaintiff's termination; that on September 13, 2011, Rivera was involved in a new allegation of 'failure to cooperate with an investigation' with an Adult Protective Service employee; and which allegation is the basis that Plaintiff's disciplinary process becomes and results in Plaintiff's termination; that the alleged 'failure to cooperate allegation' is false ---- the APS investigator and Plaintiff agreed to meet on September 14, 2011, which defendant Rivera, Sutton, Cazalas knew and Plaintiff and the APS investigator did meet on Sept 14, 2011.

Plaintiff establishes that the Defendants are not entitled to a Qualified Immunity defense. Terminating an employee for engaging in protected speech …. is an objectively unreasonable violation of such an employee's First Amendment rights." *Comer v Scott*, 610 F.3d 929, 937 (5th Cir 2010) citing *Charles v Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

Plaintiff shows that Defendant would not have otherwise terminated Plaintiff. The non-retaliatory factual basis relied upon by Defendants was created by Defendant Rivera, did not rise to level of termination and the failure to cooperate with an investigation was added.

## FACTUAL BACKGROUND

In 2005, the Department of Justice began an investigation of DADs into its treatment of residents. (Ex. 10: p.5:sec.28a and DE 1: sec. 28a)

In 2006, the Department of Justice issued a report finding violations of resident's rights which included issues of not protecting residents from harm;  (Ex. 10: p.5:sec.28b)

In 2007, the Corpus Christi State School had 1,013 incidents of injury, abuse, neglect and/or exploitation of its residents and in 2008 had 313 incident investigations.  (Ex. 10: p.5:sec.28e; and DE 1: sec. 28e)

In May of 2007, a resident at CC State School committed suicide. (Ex. 1: p.2, sec.4).

On or about September 2007: following the resident suicide at the Corpus Christi State School, State Rep. Herrera conducted a public forum to discuss  resident care and the operations at the Corpus Christi State School at the Corpus Christi City Hall.  (Ex.1:p.4,sec4).

Plaintiff /  Employees / were discouraged from speaking out;    Rivera had staff meetings where employees were discouraged from attending and speaking; plaintiff attended and was the only employee to speak out criticizing operations at the CC state school (ex.1: p.2, sec.5)

Plaintiff attended the September 2007 City Hall public forum involving the Corpus Christi State School where Plaintiff spoke out on matters of public concern (engaging in protected speech) involving the operations and care of residents at the CC State School. (Ex.1,p.2,sec. 6).

September 2007 City Hall public forum was covered by local news media and Plaintiff's speech was re-published by  Public Access CC. (Ex. 1:p.2, sec.7).

Plaintiff provided the first notice to the public that the Corpus Christi State School was housing sex offenders with its resident population. (Ex.1).

At the time of  the 2007 City Hall meeting and during 2008, 2009:  (Ex.1:p.3, sec.9)

a.  Mark Cazalas was Director of Quality Assurance (overseeing the Psychology Dept)
b.  Robert Cramer was Chief of Psychological Services
c.  Daniel Rivera was Psychologist V
d.  Plaintiff was Psychologist III

In 2008, the DOJ issued a findings report detailing system wide problems with all the State Schools related to protecting residents from harm and suggested steps to correct problems; (Ex. 10: p.7:sec.28b and DE 1: sec. 28b)

In 2008, Plaintiff was removed from the Dolphin Unit and transferred to the Pacific Unit resulting in a doubling of Plaintiff's work load and loss of working with residents that Plaintiff worked with for 6 years to build  a relationship of trust. (Ex.1:p.3,sec.10).

In 2009, Plaintiff is disciplined and issued a Decision Making Leave (DML) placing Plaintiff on one year probation that was based upon false allegations;   Rivera and Cramer were involved. (Ex.1:p.3,sec.11) Rivera testified that Plaintiff was issued DML in 2009, that the DML was torn up by the then superintendent, Ida Benson,  after Plaintiff got an attorney involved.. (Ex. 3: p.33, lines 16 to p.34, line 8); Rivera testified that Benson said 'she doesn't like attorneys, and tore it up." (Ex. 3: p.34, lines 20-23).

In 2009:
   a. the DOJ and the State of Texas formalized a Settlement Agreement to address the issues which included taking steps to protect residents from harm. Adelaide Horn (Commissioner of DADS) and Iva Benson (Superintendent of CC State School) were signatories. (Ex.10: p.5, sec. 28f and DE 1: sec. 28f)

   b. June 2009: Cazalas testified that State School settlement agreement with the Dept. of Justice was entered on or about June 2009. (Ex.6: p.8, line 16 to p.9, line 2);

   c. The Fight Club State School involving residents fighting residents was discovered. (Ex.1:p.4,sec.13)

Following the DOL Settlement Agreement, the  DOJ continued to monitor State of Texas / DADS compliance with the Settlement Agreement. (Ex.10: p.5, sec. 28g; and DE 1: sec. 28g)

September of 2010,  a pursuant to DOJ oversite, a public Town Hall Meeting was held at the Corpus Christi State School to discuss the Department of Justice report and resident care at Corpus Christi State School. State Rep. Herrero and State Rep. Ortiz  attended the Town Hall

Meeting.   Plaintiff attended and was the only Corpus Christi State School employee to speak out

on matters criticizing operations at the  CC State School. (Ex. 1:p.4,sec.14)

At the time of the September 2010, Town Hall Meeting:

a.  Chris Adams was the Commissioner of DADS which operated the CC State School and
Chris Adams attended the September 2010, Town Hall Meeting (Ex.8; ex.4)

b.  Defendant Mark Cazalas had been promoted from  Director of Quality Assurance to the
Assistant Director of Programs, the number two position, at the Corpus Christi State
School. (Ex.1; Ex.6: p.10, lines 8-15)    Cazalas attended the  September Town Hall
Meeting (Ex.6: p.9, line 25 to p.10, line 18)

c.  Defendant Robert Cramer was Chief of Psychological Services and attended the
September 2010 Town Hall Meeting.  (Ex.4: p.8, lines 2-12)

d.  Defendant Daniel Rivera was Psychologist V: Rivera attended the September 2010 Town
Hall Meeting. (Ex. 3: p.11, lines 4-19; p.10, lines 19-24)

 At the September 2010 Town Hall meeting, Plaintiff spoke on matters of public concern

involving matters related to the care of residents  of the Corpus Christi State School. set forth

under Element 2 of Plaintiff's argument. (Ex.1:p.4,sec.14,15)

2011:    Rivera testified that the Corpus Christi State Supported Living Center  was  being

monitored by the Department of Justice; that the DOJ's  monitoring had begun years earlier; that

the DOJ monitored changes that the DOJ wanted implemented regarding the care of patients,

also known as consumers; Town Hall meetings had been held during the period the DOJ was

monitoring the Corpus Christi State School. (Ex. 3: p.12, lines 1-17).

August 15, 2011: Sutton began as the Director of Behavioral Health Services for the Corpus

Christi State Supported Living Center, providing clinical and supervisory oversite for the

Department.  (Ex.5:  p.4: lines 17-20;  p.7: lines 20-24).

 August 15, 2011: At the time Sutton was hired by  the Corpus Christi State Supported Living

Center,  Sutton testified that  Sutton was aware of the Department of Justice's continuing review

of Texas State Supported Living Centers which included monitoring teams at the Corpus Christi State Supported Living Center. (Ex. 5: p.24, line 17 to p.25, line 3). Sutton and Cazalas had discussions regarding the DOJ monitoring of the Corpus Christi State Supported Living Center; DOJ monitoring included DOJ teams visiting the Corpus Christi State Supported Living Center every six months, employees being made aware of the DOJ visits;  and the DOJ monitoring teams interviewing employees and collecting documentation.(Ex.5: p.25,line 15 to p.26, line 10).

September 30, 2011:  Plaintiff is terminated. Sutton consults with Cazalas during Plaintiff's termination process, Sutton and Rivera process the termination, issue termination documents with Sutton writing "It is my decision to terminate your employment…."  (Ex. 2; Ex. 5: p.19, line 22 to p.20, line `)

Defendants

Mark Cazalas:  2007 to 2009:   Quality Assurance Director over Plaintiff's department
                Sept 2010:       promoted: Assistant Director of Programs at time of Town Hall
                2011:            promoted Director of CC State School at time Plaintiff terminated


Robert Cramer: 2007 to end 2010:  Chief of Psychological Services (Plaintiff's 2nd level
                                   supervisor)
                2010 and 2011:  Chair of Behavior Support Committee until about August 15,
                                 2011. (Ex.4: p.19, lines 1-14). In that role Cramer reviewed and
                                 provided input on  Plaintiff's work. (Ex. 4: p.21, lines 11-18).

Daniel Rivera:  2007 – 2011:   Psychologist V (above Psychologist III, Plaintiff's position, and
                                Plaintiff's direct supervisor in  2011)

Judy Sutton:   Aug 15, 2011:  hired as Director of Behavior Health Services over the
                               Psychologist Dept. (Ex. 5:  p.10: lines 3-15)


## ARGUMENT AND AUTHORITIES

Defendant in this case relies primarily on the interested testimony or documents of its employees as the sole grounds and evidence for its summary judgment motion, including the

7

depositions and/or testimony of Mark Cazalas, Judy Sutton, Daniel Rivera and Robert Cramer, employees of defendant.  Each of these employees was involved in the improper decisions made in this case and resulting discrimination and retaliation.   In Reeves v. Sanderson Plumbing Products, Inc., the Supreme Court clarified the approach a court should use when granting a judgment as a matter of law.  The court must draw all reasonable inferences in favor of the nonmoving party and not make credibility determinations or weigh the evidence.  Credence must be given to the evidence supporting the nonmovant as well as any evidence supporting the moving party that is uncontradicted, unimpeached, and **not attributable to interested witnesses**. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (emphasis added).   Therefore, all evidence of interested witnesses must be disregarded and all of the evidence in the record must be reviewed in favor of Plaintiff, drawing all reasonable inferences in favor of Plaintiff. Reeves, 530 U.S. at 150, 120 S.Ct. 2097.   In essence, Defendant relies on the evidence of interested witness.  Thus, only questions of fact are created and the summary judgment motion must be denied.

   Defendant's argument relies upon the credibility of the defendants which Plaintiff submits that the credibility of a witness is a question for a jury. ***Boyle v. Pool Offshore Co. v. A Div. Of Enserch Corp.,*** 893, F.2d 713, 717 (5th Cir.1990).

### Prior Acts as Evidence of Intent and Motive  (FRE 404(b))

#### In 2007:  Plaintiff spoke out at City Hall public forum

A.  Plaintiff was involuntarily transferred in 2008

   Following the Plaintiff's exercise of protected speech, in 2008, Plaintiff was transferred to the Pacific Unit. This resulted in Plaintiff being removed from Plaintiff's case load where Plaintiff had developed a therapeutic relationship over the prior five years which assisted Plaintiff in providing care to the residents,, because Plaintiff had formed a stable relationship

8

with these residents which resulted in these clients speaking freely with Plaintiff and coming to Plaintiff with life issues. (Ex. 1:p.3,sec.10).

The residents in the Pacific unit were diagnosed at a higher level of disability  than the residents of the Dolphin Unit which changed Plaintiff's  ability to apply her clinical psychologist skills as a result of the resident's inability to communicate. (Ex. 1, sec.10)

Plaintiff's case load was almost doubled. (Ex. 1, p.3, sec.10)

Plaintiff remained at the Pacific Unit until her termination in 2011. (Ex. 1, sec.10)

B. <u>January 2009:  Plaintiff was issued a Decision Making Leave (DML).</u>

The DML included the intent to place Plaintiff on probation for 1 year.  The Corpus Christi State School's progressive discipline policy was not followed in issuing the DML. <u>Plaintiff had no prior disciplines and a DML is the last level of the progressive discipline prior to termination.</u> Robert Cramer and  Daniel Rivera were involved in issuing the DML; Iva Benson  the Superintendent of the CC State School. (Ex. 1:p.3, sec.11)

## <u>PLAINTIFF'S  42 USC Sec. 1983 FIRST AMENDMENT RETALIATION CLAIMS</u>

Plaintiff establishes the four elements of her Section 1983 claim for First Amendment retaliation *De La Garza, Jr. v Brumby,* 2013 US Dist LEXIS 26675 (SD Victoria 2013);  *Nixon v City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)

1. Plaintiff suffered an adverse employment action
2. Plaintiff engaged in speech involving a matter of public concern
3. The interest in the speech / commenting on matters of public concern outweighed the defendant's interest in promoting efficiency;
4. The speech motivated / caused the adverse employment action

**October – November 2010: Denial of promotion / selection as Psychologist V ;**
(Ex.2: p.7, sec. 25)
<u>Mark Cazalas</u> was the Assistant Director of the Corpus Christi State School
<u>Robert Cramer</u> was Chief of Psychology and Hiring Manager for the position.
<u>Daniel Rivera</u> was Psychologist V
<u>Plaintiff</u> was a Psychologist III

**September 30, 2011, Termination**
(Ex.1:p.5, sec.18)
<u>Mark Cazalas</u>   was the Director of the Corpus Christi State School: top supervisor
<u>Judy Sutton</u>   was Director of Behavior Services:  Plaintiff's 2nd level supervisor

Daniel Rivera       was Psychologist V:  Plaintiff's direct supervisor
Robert Cramer     was Chair of the Behavior Support Committee reviewing Plaintiff's work
Plaintiff               was a Psychologist III

------------------------------------

**Element No.  1:** Plaintiff  suffered an adverse employment action

    a.  Psychologist V Position

   In October –November 2010, Plaintiff was a Psychologist III and  applied for an open Psychologist V position.  The Psychologist V would have been a promotion and increase in wages for Plaintiff. Plaintiff was not selected as  / promoted to the Psychologist III opening. Plaintiff was qualified for the position and had worked as a Psychologist III for the Corpus Christi State School for approximately nine years at the time of her application.(Ex. 1:p.4, #.16).

    b.  Termination

   Plaintiff was terminated on September 30, 2010.  (Exs 1,p.7,sec.26); Ex. 2)

**Element No. 2**: Plaintiff engaged in speech involving a matter of public concern /
                        Plaintiff spoke as a citizen on  a matter of public concern

   Plaintiff spoke out and engaged in speech at two public forums involving the operations of

and the care of residents at the Corpus Christi State School.    Defendant's Motion does not

contest this element. (DE 16 top p.13).

### 2007 City Hall Public Forum

   In 2007, a resident at CC State School committed suicide. (Ex. 1). Following the suicide, Rep. Herrero began holding public hearings investigating DADS and problems with resident care at the Corpus Christi State School and Rep Herrero held  a public meeting  Corpus Christi City Hall in 2007, regarding resident care, safety and the operations of the Corpus Christi State School.  (Ex. 1: p.2-3, secs 6,7,8).

   Rivera testified that Rivera was employed at the time the patient committed suicide and  that the suicide incident was covered by local press. (Ex. 3:p.12: line 21 to p.13 line 7: p.13, lines 2-7).

   Regarding the patient suicide, Rivera admits that Plaintiff told Rivera that Plaintiff attended the public forum at City Hall where the Plaintiff told Rivera about the meeting, that Plaintiff went to the meeting "to speak her mind about issues that she (plaintiff) had concerns with". (Ex. 3: p.13, lines 15-23).

<u>September 2010 Town Hall Public Forum</u>

Plaintiff provides that the September 2010, Town Hall Meeting at the CC State School was open to the public and held  to discuss the Department of Justice report and resident care; and was also attended by State Rep. Herrero and State Rep. Ortiz.   (Ex. 1: p.4, sec.14)

At the September 2010 Town Hall meeting, Plaintiff spoke on matters of public concern. Plaintiff spoke out on matters regarding: (Ex. 1:p.4, sec.15)

a.  discussions related to the care of patients,  called consumers, of the Corpus Christi State School.

b.  Informing all  how the treatment provided to  residents was being adversely impacted because of policies that had been implement which removed Active Treatment Staff from spending time directly with the residents and assigning the Staff  paperwork duties  --- CC State School was devoting staff resources to do paperwork to provide in on-going Department of Justice investigation to make the state school look good in the investigation when the staff's greater need was to work directly with the residents who needed care.

c.  Informing all regarding budget and monies spent by DADS  to train psychologists in Applied Behavior Analysis (ABA)  which was not an area that could be practiced or used at the Corpus Christi State School because ABA guidelines conflicted with the Intermediate Care Facility (ICF) guidelines and the CC State School operated under the  ICF guidelines.


**Element No. 3**: <u>The interest in commenting on matters of public concern outweighed the defendant's interest in promoting efficiency</u>

<u>That her interest in the speech outweighed the government's interest in the efficient provision of public service;</u>

Defendant's Motion does not contest that Plaintiff's rights to speak outweigh her employer's

interests.  (DE 16: top p. 13).  Plaintiff incorporates the facts in her public speech for this

element.

Defendant Cramer testified that:

a.  He, Cramer,  also attended the September 2010 Town Hall meeting where Plaintiff attended and spoke. (Ex.4: p.8, lines 2-12).
b.  Chris Adams (Commissioner of DADS) was present and discussed questions and answers related to the Department of Justice;
c.  Plaintiff spoke out about client care and expressed concern about state school policies related to client care and behavior strategies. (Ex. 4: p.8, lines 13-19; p.9, lines 15-18).

Defendant Rivera testified that: (Ex. 3: p.11, lines 6-16; p.10, lines 19-24).

    a.  He, Rivera, had also seen Chris Adams at the town hall meeting;
    b.  Chris Adams was the Commissioner of DADS;
    c.  town hall meetings were held so State School employees could receive information about changes in the agency
    d.  State School employees could interact in the Town Hall meeting by asking questions and raising concerns.

Defendant Cazalas testified that:

    a.  the State School / DADS settlement agreement with the Dept. of Justice was entered on or about June 2009. (Ex.6: p.8, line 16 to p.9, line 2);
    b.  he, Cazalas, attended the town hall meeting held at the Corpus Christi State School in 2010. (Ex. 6: p. 9, line 25 to p.10, line 18)

The Corpus Christi State Supported Living Center was also being monitored by the Department of Justice during 2010 and 2011. Rivera testified that the Corpus Christi State Supported Living Center was also being monitored by the Department of Justice in 2011; that the DOJ's monitoring had begun years earlier; that the DOJ monitored changes that the DOJ wanted implemented regarding the care of patients, also known as consumers; Town Hall meetings had been held during the period the DOJ was monitoring the Corpus Christi State School. (Ex. 3: p.12, lines 1-17).


**Element No. 4**: <u>The speech motivated the adverse employment action / the speech caused the adverse employment action</u>.

Plaintiff is required to show that the speech was a motivating factor in the adverse employment decision. *De La Garza, Jr. v Brumby,* 2013 US Dist LEXIS 26675 (SD Victoria 2013) citing *Beattie v Madison Cnty.Sch.Dist*., 254 F.3d 595, 601 (5th Cir. 2001)

Plaintiff submits that it is "for the jury to resolve…. whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision." *La Garza, Jr. v Brumby*, 2013 US Dist LEXIS 26675 citing *Branton v City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) citing Connick, 461 U.S. at 147-48). In *De La Garza, Jr. v Brumby*, De La Garza, Jr. ran

for sheriff against Brumby, lost,  later applied for the position of School Resource Officer for Goliad ISD and was not hired by Brumby.  DeLa Garza, Jr.'s evidence of 1st Amendment retaliaton motivating factor was Brumby, the sheriff,  not hiring DeLa Garza was Brumby's statement that :

> "*I like my job and don't want to give anyone a base of operations to run against me.*"

 The Judge found that in the context of First Amendment retaliation cases,  this testimony "amounts to a smoldering, if not smoking, gun on the causation issue"; citing *Brady*, 145 F.3d at 713 where a jury verdict got the plaintiff was affirmed on causation element based in part on testimony recounting the sheriff's comments that he did not rehire a deputy because the deputy was backing the wrong man and had bet on the wrong horse and lost. *De La Garza* * 18.

The defendant in *De La Garza* argued that De La Garza, Jr.'s evidence "comes from just one source, for whom credibility issues may exist, whereas in this lawsuit Brumby has detailed numerous nonspeech reasons for rejecting De La Garza. *De La Garza*  *. 18.

 "But such weighing of the evidence and credibility determinations are for the jury"… and created a disputed fact issue on the causation element. *De La Garza* * 18.

The District Court in *De La Garza, Jr*. also distinguished the Fifth Circuit cases finding that motivating factor was a summary judgment issue.   The Fifth Circuit used summary judgment and not jury issue in:

1. *Gerhart v Hayes,* 217 F.3d 320, 322  (5th Cir.2000): where the only causation evidence the plaintiff offered was the decisionmaker's mere knowledge of the speech and the plaintiff offered no other evidence that the motive behind the decision to terminate was to retaliate for her having spoken out;

2. *Beattie*, 254 F.3d at 605 (5th Cir.  )  : where the plaintiff could not show that the school board who fired her had knowledge of her speech and relied on timing alone.

**Psychologist V Position**

Evidence of Cramer's retaliatory Intent / timing / pretext

Plaintiff submits that the direct evidence of Cramer's retaliatory animus because of Plaintiff's First Amendment speech is sufficient to create a fact issue for a jury to determine. Subject thereto:

Defendant Cramer testified that, he, Cramer,  was the hiring manager for the selection of the 2010 Psychologist V opening. (Ex. 4: p.15, lines 9-10). Cramer testified that he did not consider Plaintiff because Cramer did not have Plaintiff's  application.  Cramer selected Elena Ruiz. (p.13 line 11 to p.14, line 19).  Cramer acknowledged that Ruth Dominguez would have given him all the complete applications however the applications were submitted. (Ex. 4: p.16,lines 15-17).

Plaintiff faxed a complete application for the Psychologist V position prior to the selection to defendant's HR department; applications were allowed to be submitted by fax and the receipt of plaintiff's application was confirmed by HR department, including confirmed by Ruth Dominguez,  prior to the selection being made. (Ex. 1:p.4-5, sec. 16)

<u>Timing</u>

September 2010: Plaintiff engaged in First Amendment Speech.

October – November 2011: Cramer was the hiring manager for the selection of the Psychologist V position which Plaintiff was not selected.

<u>Direct Evidence of Retaliatory Intent Based Upon Plaintiff's Speech</u>

February 7, 2011:  email correspondence between Defendant Cramer, Defendant Rivera and Bruce Boswell evidencing Cramer's retaliatory animus at plaintiff because of Plaintiff's public comments at the September 2010 public Town Hall. (Ex. 8).

Cramer had been Plaintiff's direct supervisor from about 2005 to the latter part of 2010; Cramer was present at the September 2010, Town Hall meeting where Plaintiff engaged in the exercise of 1st Amendment speech. (Ex.1:p.7, sec.27)

February 7, 2011: Cramer emailed Daniel Rivera (Plaintiff's direct supervisor) and Bruce Boswell (Plaintiff's 2nd level supervisor) showing retaliatory animus at Plaintiff's protected speech in the September 2010 Town Hall meeting stating : *'the more she talks (as she did to chris adams at town hall), the more I and my dept look bad'*.  (Chris Adams was the Assistant Commissioner of DADS who attended the September 2010 Town Hall Meeting). (Ex.8)

## September 30, 2011, Termination

At the time of Plaintiff's September 30, 2011, termination, Plaintiff's supervisory structure was: (Ex.1: p.5, sec.18)

Mark Cazalas was the Interim Director of the Corpus Christi State School (Ex.1).

Judy Sutton hired as Director of Behavior Health Services on August 15, 2011(Ex.5: p.10: 3-15).

Daniel Rivera was Psychologist V: Plaintiff's direct supervisor. (Ex.1).   Rivera states he was responsible for all aspects of Plaintiff's job performance; that Rivera would make Plaintiff aware of any concerns Rivera had with Plaintiff's performance. (Ex. 3: p.7,lines 7 to p.8, line 2).   Rivera was supervised by Cramer for approximately a year of the time Rivera supervised Plaintiff. (Ex. 3: p.8, lines 5-19)

Robert Cramer was Clinical Psychologist and Chair of the Behavior Support Committee which that reviews assessments and plans: in that role Cramer reviewed Plaintiff's work (Ex.4: p. 20: lines 8-16);

### Defendants were Decisionmakers: Facutally and Legally

Defendant's argument is that Defendants were not the decisionmakers and that the Defendants had no input in the decision to terminate the Plaintiff therefore could not have retaliated against Plaintiff. (DE 16: def motion p.14-16).

This is not a credible assertion, not supported by the facts and based upon the testimony of defendants.   Plaintiff submits that defendants' statements and assertions that they were not the decisionmakers nor involved in the decisionmaking process creates a credibility issue for the jury on the issue of whether Plaintiff was terminated because of Plaintiff's First Amendment speech.

<u>Cat's Paw</u>

Defendants assertion that they were not the decisionmaker(s) or lacked authority over the employment decision is not correct.  The "cat's paw" theory of liability refers to one used by another to accomplish his purposes. Where a defendant alleges that it did not make the decision, but the decision was made by the Human Resource department, the cat's paw theory of liability provides that a defendant can be liable for employment retaliation even though the HR had no retaliatory biases. *Staub v Proctor Hosp*., 131 S.Ct. 1186 (2011). In Staub, Staub's 1st and 2nd level supervisor expressed hostility to Staub's protected status (military obligations), and were fired by Proctor's  Vice President of Human Resource Dept after the VP heard made substantial complaints from the supervisors.

Plaintiff may show defendant(s) acted, had "leverage, or exerted influence" over the person the defendant alleges is the decisionmaker.  *Rene Garcia v CCID*, 2011 U.S. Dist. LEXIS 82805 (SD Tex 2011) citing  *Hervey v. Mississippi Dept. of Educ, 404 Fed.Appx*. 865, 871 (5th Cir. 2010) (unpublished).

Sutton and Rivera signed the Notice of Termination. Rivera testified that it was Rivera's and Sutton's opinion that Plaintiff should be terminated. (p.32, lines 6-12).

a.  <u>Defendant Sutton</u>

Sutton issued Plaintiff the September 28, 2011, Notice of Possible Disciplinary Action. (Ex. 7).  The notice is signed by Sutton and Rivera and  the last paragraph on p. 4,  states
"**<u>Before I decide what disciplinary action to take</u>**…."

Sutton issued Plaintiff the September 30, 2011, Termination Notice. (Ex. 2).  The notice is signed by Sutton and Rivera. The bottom of p. 4,   states "after due consideration to the seriousness and consequences……..
**it is my decision to terminate your employmen**t…. effective immediately."

At the time Sutton was hired by  the Corpus Christi State Supported Living Center,  Sutton testified that  Suttorn was aware of the Department of Justice's continuing review of Texas State Supported Living Centers which included monitoring teams at the Corpus Christi State Supported Living Center. (Ex. 5: p.24, line 17 to p.25, line 3). Sutton and Cazalas had discussions regarding the DOJ monitoring of the Corpus Christi State Supported Living Center; DOJ monitoring included DOJ teams visiting  the Corpus Christi State Supported Living Center every six months, employees being made aware of the DOJ visits;  and the DOJ monitoring teams interviewing employees and collecting documentation. (Ex. 5: p.25, line 15 to p.26, line 10).

Sutton testified that, she,  Sutton, was processing the DML  'because there was an ongoing pattern, at least based on the evidence that I reviewed and to the best of my memory, that there were ongoing issues with respect to time and leave… performance." (Ex. 5: p..15, line 19, to p.16, line 3). These had to occur prior to Sutton's employment began on August 15, 2011.

**b.  Rivera:**

Rivera discouraged Plaintiff from attending and speaking at the 2007 City Hall public forum. (Ex. 1: p.2, sec.5).

Rivera testified that he, Rivera,  was employed at the time the resident committed suicide and that the suicide incident was covered by local press. (Ex. 3:p.12: line 21 to p.13 line 7: p.13, lines 2-7).  Rivera acknowledges that Plaintiff had told Rivera that Plaintiff attended the 2007 public forum at City Hall where the Plaintiff told Rivera about the meeting, that Plaintiff went to the

meeting "to speak her mind about issues that she (plaintiff) had concerns with". (Ex. 3: p.13, lines 15-23).

Rivera was part of a discussion with Cramer where there is direct evidence of retaliatory animus against Plaintiff because of Plaintiff's public speech at the September 2010 Town Hall public forum. February 7, 2011: Cramer emailed Daniel Rivera (Plaintiff's direct supervisor) and Bruce Boswell (Director of Quality Assurance over psychologists)   evidencing anger at Plaintiff's protected speech in the September 2010 Town Hall meeting stating : *'the more she talks (as she did to chris adams at town hall), the more I and my dept look bad'*".  (Chris Adams was the Assistant Commissioner of DADS who attended the September 2010 Town Hall Meeting. The department was the Psychology Department).

 In May of 2011, Rivera met with Plaintiff. This was a meeting Plaintiff had requested with Defendant Cazalas and which Plaintiff was surprised by Rivera and some coworkers also being present. (Ex. 1: p.8: sec. 28).

> Defendant Cramer's assistant  was present and  told Plaintiff, Rivera and Cazalas, that Plaintiff should not have spoken out at the Sept 2010 Town Hall and said the things that Plaintiff  had said. (Ex.1:p.8, sec.28)

> Cavalas then told Plaintiff in front of all attending, that Cavalas remembered the meeting, what Plaintiff had said and thought Plaintiff's speech made the Corpus Christi State School look bad  --- that Cazalas could understand why Plaintiff's coworker would be mad at what Plaintiff said at the  September 2010 Town Hall.  (Ex.1: p.8, sec.29)

> Rivera agreed with the negative complaint about Plaintiff's speech at the September 2011 Town Hall. (Ex.1: p.8, sec. 29)

> Neither Rivera nor Cazalas showed Plaintiff support or spoke up defending Plaintiff's right to speak what Plaintiff said at the September 2010 Town Hall. (Ex.1:p.8, sec.29)

 Rivera provided the documentation and information to Sutton (Sutton's employment began August 15, 2011). Rivera provided all the input and information which was used by Sutton to

start Plaintiff's discipline process.  (Ex. 2, 7) all Defendant's rely upon these events, facts and allegations by Rivera that occurred prior to Sutton being hired in the defense that they would have taken the same action. Plaintiff provides factual dispute to all allegations in her argument below that defendant would not have taken same action.

Plaintiff provided evidence to rebut each of the allegations.  (Ex. 1: p.6,7: sec.21,22; Ex.2).

Initially, Sutton was not processing Plaintiff's discipline as a termination. (Ex. 23, lines 15-18).    Prior to September 13, 2011, Sutton was processing Plaintiff's discipline as a DML. (Ex.5: p.32, lines 14-20).  Typically, a DML places an employee on probation to correct their mistakes, not terminate the employee. (p.33, lines 3-6). During the DML process, Rivera alleged to Sutton that plaintiff had not cooperated in a DFPS investigation involving DFPS employee Rita Calderon. (Ex. 5: p.20, line 24 to p.21, line 6; Ex.9). This allegation changed Sutton's disciplinary process resulting in Plaintiff's termination. (Ex. 5: p.23, line 8-18) (Ex. 2, 7).

Rivera also admits that the 9/13/11 Calderon incident was the reason used to terminate (Ex. 3: p.29, line 1, to p.30, line 8) and not place plaintiff on probation. Rivera obtained the email from Calderon. (Ex.9).

When shown Calderon's email about the September 13, incident,  where Calderon wrote "I agree to come back on 9/14" and Calderon wrote that Calderon agreed to meet with Plaintiff on the 14th, the next day: Rivera testified "**she didn't say that to me**".  (Ex. 3: p.24, lines 10-22).

Sutton testified that "the incident on 9/13 resulted in a determination that the Notice of Possible Disciplinary Action is a more appropriate action." (Ex.5: p.35, lines 2-7).  Sutton testified that 'failure to cooperate in an investigation' is a basis for termination and that the September 13, 2011, allegation "was the final deciding factor" in Sutton terminating Plaintiff. (Ex.5: p. 35, line 17 to p.36, line 2).

**c. Defendant Cazalas:**

At the time Sutton was hired by the Corpus Christi State Supported Living Center, Sutton testified that Sutton and Cazalas had discussions regarding the DOJ monitoring of the Corpus Christi State Supported Living Center; DOJ monitoring included DOJ teams visiting the Corpus Christi State Supported Living Center every six months, employees being made aware of the DOJ visits; and the DOJ monitoring teams interviewing employees and collecting documentation. (Ex. 5: p.25, line 15 to p.26, line 10).

Sutton testified that she, Sutton, consulted Cazalas in terminating Plaintiff. (Ex. 5: p.19, line 22 to p. 20, line1) . Sutton gave Cazalas the documentation. (Ex. 5: p.20, lines 17-19). Cazalas admits that Cazalas became aware of Plaintiff's pending DML in September (p. 16, line 20 to p.17, line 2);

May 2011: Cazalas admits he met with Plaintiff. (Ex. 6: p.26, lines 17-25). This was a meeting Plaintiff had requested and which Plaintiff was surprised by Rivera and some coworkers also being present. (Ex. 1: p.8, sec.28).

Defendant Cramer's assistant was present and told Plaintiff, Rivera and Cazalas, that Plaintiff should not have spoken out at the Sept 2010 Town Hall and said the things that Plaintiff had said. (Ex.1:p.8, sec.28) Cazalas nodded his head in agreement with the complaint about Plaintiff's speech at the September 2011 Town Hall. (Ex.1:p.8,sec.29). Cavalas remembered the meeting, what Plaintiff had said and thought Plaintiff's speech made the Corpus Christi State School look bad --- that Cazalas could understand why Plaintiff's coworker would be mad at what Plaintiff said at the September 2010 Town Hall. (Ex.1:p.8,sec.29)

**d. Defendant Cramer:**

Cramer had been Plaintiff's direct supervisor from about 2005 to the latter part of 2010. (Ex. 1: p.7, sec.27).

Cramer was present at the September 2010, Town Hall meeting.  Cramer was mad at Plaintiff for speaking out.  Cramer emailed Daniel Rivera (Plaintiff's direct supervisor) and Bruce Boswell evidencing anger at Plaintiff's protected speech in the September 2010 Town Hall meeting stating : *__'the more she talks (as she did to chris adams at town hall), the more I and my dept look bad"__*.  (Chris Adams was the Assistant Commissioner of DADS who attended the September 2010 Town Hall Meeting). (Ex. 8)

Cramer testified that: in  2010 to August 15, 2011,  Cramer served as the chair of the Behavior Support Committee which that reviews assessments and plans: (Ex.4: p. 20: lines 8-16); in that role Cramer reviewed Plaintiff's work, and reviewed Plaintiff's work; Rivera was also on the committee As to email, Cramer provided his opinion on Plaintiff's work performance even though not in a supervisory position. (Ex.4: p,19, lines 1-14);   in 2011, until Sutton arrived in August of 2011.

## PRETEXT

### Evidence Defendants' Reason for Terminating Plaintiff is False

A plaintiff's prima facie case, combined with sufficient evidence to find that that employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v Sanderson Plumbing*, 120 S.Ct. 2097 (2000).

The reason and basis  Sutton and Rivera terminated Plaintiff was the incident where  they allege  Plaintiff failed to cooperate with an Adult Protective Service investigation on September 13, 2011. (Ex. 7: p.2, p.4 bottom).  Sutton consulted with Cazalas and provided Cazalas copies of the termination documents. (Ex. 5: p.19, line 22 to p. 20, line1;  p.20, lines 17-19)

Rivera testified that  Corpus Christi State Supported Living Center  had no policy that prevented Plaintiff from rescheduling an appointment with Calderon, an APS investigator. (p.28, lines 10-14).   Rivera did not know who the client was, did not know what Calderon was investigating nor the substance of the investigation    (p.26, lines 6-17)

Rivera testified that Rivera and Sutton wrote the sentence listing the 9-13-11 failure to cooperate  allegations. (Ex. 3: p.30, lines 1-13).

Plaintiff provides evidence that the alleged failure to cooperate was false, was known to be false by Defendants and used as a pretext by Defendants to hide their retaliatory act in terminating the plaintiff because of plaintiff's First Amendment speech.

 Sutton, Rivera and Cazalas knew that Plaintiff and the investigator had agreed to meet on September 14, 2011, as shown by the APS investigator's email, in the September 28, 2011, Notice of Disciplinary Action, and notice of Termination. (Ex.2, 7)

 When Sutton began Plaintiff's disciplinary process,  Sutton stated she, Sutton, was not processing Plaintiff's discipline as a termination. (Ex. 5: p. 23, lines 15-18).        Prior to September 13, 2011, Sutton was processing Plaintiff's discipline as a DML. (Ex.5: p.32, lines 14-20).  This would not have ended with Plaintiff's termination. Typically, a DML places an employee on probation to correct their mistakes, not terminate the employee. (Ex. 5: p.33, lines 3-6)    When asked what is the purpose of a DML, Sutton testified that "the purpose of a DML is to assist an employee in improving their job performance"; (Ex. 5: p. 16, lines 4-8)        That the employee is expected to make corrections during the probationary period and if the employee doesn't make corrections, the can lead to termination.

Sutton testified that "the incident on 9/13 resulted in a determination that the Notice of Possible Disciplinary Action (termination) is a more appropriate action." (Ex.5: p.35, lines 2-7).

Sutton testified that 'failure to cooperate in an investigation' is a basis for termination and that the September 13, 2011, allegation "was the final deciding factor" in Sutton terminating Plaintiff. (Ex.5: p. 35, line 17 to p.36, line 2).

Plaintiff did not refuse to meet with the investigator.   Ms.Calderon's , the Adult Protective Service employee, email establishes that Ms.Calderon contacted Plaintiff on September 13, 2011, and had agreed to return the next day, September 14, 2011, to meet with the Plaintiff. (Ex. 9).   The September 28, 2011, notice of possible disciplinary action states the same. Calderon wrote 'I agreed to come back on 9/14/11". (Ex. 7: p. 2, middle of middle section).

When asked about this fact at deposition, Rivera was shown Calderon's email about the September 13, incident,  where Calderon wrote "I agree to come back on 9/14", the next day: Rivera testified **"she didn't say that to me**". (Ex. 3: p.24, lines 10-22).  This is evidence that Rivera supplied additional evidence that contradicted Calderon's written email.

Rivera provided Sutton the basis of the September 13, 2011, alleged failure to cooperate with Calderon, Sutton never contacted nor talked to Calderon, nor questioned Calderon as to the facts. (Ex. 5: p. 22, lines 11-14).  Prior to that, Sutton was not processing Plaintiff's discipline as a termination. (Ex. 5: p.23, lines 16-18).  Sutton testified that she had no contact with Calderon and did not investigate the incident herself. (Ex. 5: p.24, lines 3-5).

Sutton testified that Calderon was an investigator who worked for the Adult Protective Services and that Sutton has never received email from any other investigator with APS regarding her staff. (Ex. 5: p. 37, line 14, to p. 38, line 2);

<u>CC State School Did Not Have Policy Preventing Plaintiff<br>from Rescheduling to Meet  the APS Investigator from  Sept 13, 2001,  to Sept 14, 2011</u>

Rivera testified that  Corpus Christi State Supported Living Center  had no policy that prevented Plaintiff from rescheduling an appointment with Calderon, an APS investigator. (Ex. 3: p.28, lines 10-14).

Rivera did not know who the client was, did not know what Calderon was investigating nor the substance of the investigation    (p.26, lines 6-17)

<u>APS Investigations are 10 Day Investigations</u>

When asked to state the dates and final outcome of the Calderon investigation,  Sutton, Cazalas, and Rivera each responded that the investigation began on September 13 and ended with a final report of no abuse on September 21, 2011. (Sutton: Ex. 11, Interrog No. 15; Cazalas: Ex.12, Int 11; Rivera: Ex. 13: Int 14).

Cazalas testified that Adult Protective Services  has a specific number of days to complete an investigation:  a final report must be to the facility within 10 days. (Ex. 6: p.20, line 19 to p.21, line 5Regarding this matter of importance to terminate Plaintiff:

<u>Plaintiff met with Calderon, the APS Investigator</u>

September 13, 2011, Calderon agreed to come back on September 14, 2011, to meet with Plaintiff;  Calderon met with Plaintiff on September 14, 2011. (Ex. 1)

<u>Plaintiff Has Shown that Plaintiff's Protected Activity</u>
<u>Caused Plaintiff's Termination and Defendant would not have terminated Plaintiff otherwise</u>

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The inquiry into objective reasonableness is a question of law which may be decided by a trial court only in the absence of any dispute over material facts. ***Cantu v. Rocha***, 77 F.3d 795, 802 (5th Cir.1996). Summary Judgment should be denied if there are genuine issues of historical

fact material to the issue of whether the defendant acted in an objectively reasonable manner. *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.1993) .

The Fifth Circuit has stated  "We can determine as a matter of law whether ..(the Defendant) is entitled to qualified immunity after accepting all of ..(the Plaintiff's) factual allegations as true." *Colston v. Barnhart* 130 F.3d 96, 98,99 (5th Cir.1997).

Plaintiff has asserted a claim under 42 U.S.C. sec.1983 based on First Amendment retaliation. Defendant is not entitled to   Qualified Immunity  if Plaintiff shows:  (*Charles v Grief*, 522 F.3d 508, 511 (5th Cir. 2008):

a.  A violation of a clearly established right; and

b.  That the defendant's conduct was not objectively reasonable in light of clearly established law at the time of the incident:

<u>A violation of a clearly established right</u>

Plaintiff has alleged  42 Sec. 1983 violations of the First Amendment to the US Constitution's right to speak on matters of public concern.   The government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment." *Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir. 1999). The First Amendment's Free Speech Clause protects public employees who exercise their free speech rights. *Comer v Scott*, 610 F.3d 929, 937 (5th Cir. 2010) ref *Garcetti v Ceballos*, 547 US 410, 413 (2006) ("it is well settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.")

The First Amendment right against retaliation for protected speech was clearly established at the time of:

a.   Plaintiff's 2010  application for Psychologist V opening;

b.  Plaintiff's September 30, 2011, termination.

<u>The defendants conduct was not objectively reasonable</u>
<u>in light of clearly established law at the time of the incident:</u>

Plaintiff has alleged and offered evidence that Defendants Sutton, Rivera and Cazalas made the adverse employment actions because  Plaintiff for engaging in protected speech.

Terminating an employee for engaging in protected speech …. is an objectively unreasonable violation of such an employee's First Amendment rights."  Comer v Scott, 610 F.3d 929, 937 (5th Cir 2010) citing Charles v Grief, 522 F.3d 508, 511 (5th Cir. 2008).

Plaintiff has shown that Plaintiff spoke out on matters of public concern at two town hall meetings open to the public.

Plaintiff Carlow has alleged in her complaint and provided evidence in this response sufficient facts and details to show that Defendants' conduct violated Plaintiff's First Amendment right to be free from retaliation for protected speech: .

a.  Defendant Cramer in regards to Plaintiff's 2010   application for Psychologist V opening:
b.  Defendants Sutton, Rivera, and Cazalas regards to Plaintiff's 2011 termination.

<u>Facts show that Plaintiff fired because of her protected activity and</u>
<u>Defendant's would not have terminated / failed to promote Plaintiff otherwise</u>

Defendants allege that they would have terminated Plaintiff notwithstanding Plaintiff's protected activity. Plaintiff incorporates all legal and factual argument above herein on this issue.

Defendants base their allegation that Plaintiff would have been fired without her protected activity.

This is not true. Plaintiff has provided evidence establishing that none of the historical facts or alleged misconduct would have resulted in Plaintiff's termination; that Plaintiff's discipline was originally being processed as a Decision Making Leave which would have resulted in placing

plaintiff on probation.  The Decision Making Leave became a termination solely because of the allegation that Plaintiff failed to cooperate with APS investigator Calderon on September 13, 2011 which was a false statement:  on September 13, 2011, Calderon had agreed to meet with Plaintiff on September 14, 2011.

Plaintiff has produced direct evidence of retaliatory bias as set forth above which precludes this argument by Defendants.

Defendant's rely upon events, facts and allegations that occurred prior to Sutton being hired. Plaintiff has shown that Plaintiff was not going to be terminated based upon these allegations.

Plaintiff has provided evidence disputing each of the factual allegations and which evidence includes showing that Defendants Cramer and Rivera made false allegations of misconduct as concerns defendants' non-retaliatory reason. Plaintiff's factual rebuttal to the allegations is recited in the Notice of Termination. (Ex. 2).  Plaintiff's attached declaration incorporates and declares the facts in her response as set forth in the Notice of Termination to be true.

The factual basis relied upon by defendant for it's argument that Plaintiff would have been terminated anyway are set out in Plaintiff's Termination Documents: Exs. 2, 7).

In July 2011, Plaintiff met with Boswell, her 2nd level supervisor,  and Rivera, her  first level supervisor,  went over all Plaintiff's personnel issues up to that time, resolved them and Plaintiff signed developemental note which stating  everything was cleared up and Plaintiff's caseload was at 95%. (Ex.1)  Rivera brings up the same issues in September, 2011. (Ex1:sec 20,21; ex.7)

Defendant Rivera  provided the basis for Plaintiff's alleged misconduct relied upon by all defs:

1. Rivera asserts Plaintiff had excessive tardiness and unexcused absences from Jan to Aug 2011. Rivera was responsible for  these allegations.  Plaintiff met with Rivera and her 2nd level supervisor in August 2011, and established that Rivera's allegations were not accurate and the matter was resolved. (Ex.1: p.6, sec.21a; Ex. 2, 7)

2.   Rivera alleged that Plaintiff did not report to work on Aug 29, 2011.  Plaintiff establishes that she had notified Rivera prior to taking the day off. (Ex.1: p.6, sec.21b; Ex. 2, 7)

3.   Rivera alleged Plaintiff falsified her time on March 11, 2011, based upon Rivera's review of guard records.  Rivera never brought this to Plaintiff's attention until September 28, 2011. (Ex.1: p.6, sec.21c; Ex. 2, 7)

4.   Rivera alleged that Plaintiff worked late without approval. Plaintiff states that Rivera had approved Plaintiff working late.  (Ex.1: p.6, sec.21d; Ex. 2, 7)

5.   Rivera alleged Plaintiff had a pattern of  job performance issues related to performance counseling on 2/25/11 and 3/1/11.  Plaintiff met with Rivera and Boswell, her 2nd level supervisor at time of the counselings; Boswell did not find a pattern of job performance issues, and approved Plaintiff to continuing working the alternate work schedule that had been put in place.  Rivera had not brought any issues to Plaintiff's attention until August 28, 2011. (Ex.1: p.6, sec.21e; Ex. 2, 7)

6.   Rivera alleges Plaintiff did not provide counseling to a consumer on 4/29/11. Rivera had not brought this issue up to or informed Plaintiff of it until September 28, 2011, at which time Plaintiff responded that there was confusion of the parameters of the On Duty Psychologist, that Rivera had advised Plaintiff that the psychologist of Atlantic unit would be completing the call. (Ex.1: p.6, sec.21f; Ex. 2, 7)

7.   Rivera alleged that Plaintiff did not respond to a restraint in progress call. Plaintiff provided that she did respond: Plaintiff contacted the unit, was advised that the restraint had been completed and the resident was calm. (Ex.1: p.6, sec.21g; Ex. 2, 7)

8.   Rivera alleged that employees told Rivera that Plaintiff had been on Facebook for hours.  Plaintiff provided that this was not true, that she is very busy during work time and does not have hours at a time.  (Ex.1: p.6, sec.21h; Ex. 2, 7)

Plaintiff provided evidence disputing each of Rivera's allegations and establishing defendants would not have otherwise terminated plaintiff.

Plaintiff has set forth earlier that Defendants acknowledge that even if true, this conduct would not have resulted in Plaintiff's termination.

Therefore, Defendants had to make the additional false allegation that Plaintiff failed to cooperate with an APS investigation.  The evidence is clear that Plaintiff and the APS investigator had agreed to reschedule their meeting to September 14, 2011, that Plaintiff met with the APS investigator on Sept 14, 2011; that APS investigation began on September 13,

2011;  the APS must get their report done in 10 days and the APS finished her investigation on September 21, 2011.  (Ex. 1: p.6, sec.22; Ex. 6.  ;  Exs. 11, 12, 13).


## CONCLUSION

Plaintiff has established facts from which a jury could reasonably find that the Defendant retaliated against Plaintiff because Plaintiff spoke out on matters of public concern, that defenants are not entitled to Qualified Immunity and that Defendant is not entitled to a judgment as a matter of law on its affirmative defense that they would have taken the adverse employment action notwithstanding Plaintiff's protected activity. . For all the reasons set forth above, Defendant's Motion for Summary Judgment should be denied in all matters.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court deny Defendant's Motion for Summary Judgment in its entirety  and for all other relief to which Plaintiff may show himself entitled in law or in equity and as this Court may deem appropriate;

RESPECTFULLY SUBMITTED,

By: /s/ Chris McJunkin                   _____
Chris McJunkin
Fed I.D. #23548
State Bar No.  13686525
2842 Lawnview St.
Corpus Christi, Texas 78404
Tel: (361) 882-5747
Fax: (361) 882-8926

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of  May, 2013, a true and correct copy of the foregoing document was delivered to counsel as shown pursuant to the Federal Rules of Civil Procedure:

Dan Perkins
Assistant Attorney General
P.O.Box 12548
Austin, Texas 78711
Fax: (512) 320-0667                    via CM/ECF

By: /s/ Chris McJunkin                   _____
Chris McJunkin