IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JANET CARLOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:12-CV-00146 |
| | § | |
| DANIEL RIVERA, | § | |
| ROBERT CRAMER, | § | |
| JUDY SUTTON, and | § | |
| MARK CAZALAS, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Janet Carlow alleges that Defendants Daniel Rivera, Robert Cramer, Judy Sutton and Mark Cazalas, supervisors at the Corpus Christi State Supported Living Center ("CCSSLC" or "the Center"), violated her constitutional right to free speech by failing to promote her and then terminating her after she spoke out on matters of public concern. Pending before the court is Defendants' Motion for Summary Judgment to which Plaintiff responded ( D.E. 16, 17). For the reasons set out below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment.

## BACKGROUND

The recitation of facts is taken from Plaintiff's pleadings and evidence in the record and is viewed in the light most favorable to her. The CCSSLC is a residential facility for individuals with mental and physical impairments and is operated by a state agency, the Texas Department of Aging and Disability Services ("DADS"). Plaintiff began working for DADS as a clinical

psychologist at the Associate Psychologist III level at the CCSSLC in May 2001. Defendant Rivera was Plaintiff's direct supervisor from approximately 2010 until she was terminated in September 2011. Defendant Cramer was Chief Psychologist at CCSSLC from July 2005 through December 2010 and began working as a Clinical Psychologist in December 2010. Defendant Cazalas was the Director of Quality Assurance at CCSSLC from 2005 through 2009 when he became Assistant Director of Programs and he has served as Interim Director and Director at the Center since September 2011. Defendant Sutton began working as the Director of Behavioral Health Services at CCSSLC in August 2011.

Sometime in 2007, Plaintiff reported abuse, neglect, and exploitation of residents of the unit where she worked and asserted that the mistreatment was the result of a lack of supervision by the Unit Director. Plaintiff reported her concerns to the Superintendent of CCSSLC, the Unit Director, the Department of Protective Services, and to Defendant Cramer.

In September 2007, following suicide by a CCSSLC resident, a Texas state representative conducted a public forum regarding issues at the Center. Plaintiff spoke at the meeting about DADS placing registered sex offenders in the residences and also about the DADS admissions process of placing aggressive persons alongside residents who could not defend themselves. Plaintiff's comments were recorded and played on the local public access television channel. At the time Plaintiff spoke out, Defendant Cramer was the Chief of Psychological Services, Defendant Cazalas was the Director of Quality Assurance, and Defendant Rivera was working as a Psychologist III.

In 2008, Plaintiff was transferred from the Dolphin Unit where she had worked for approximately five years to the Pacific Unit. As part of the transfer, Plaintiff was no longer able to work with residents with whom she had developed a therapeutic relationship over the previous

five years. Also, the residents at the Pacific Unit were diagnosed with a higher level of disability than the residents at the Dolphin Unit and Plaintiff was not able to apply her clinical psychological skills in the same manner. In addition, Plaintiff's caseload almost doubled.

In January 2009, Defendants Rivera and Cramer, along with other CCSSLC administrators, issued Plaintiff a notice of "Decision Making Leave" and placed her on probation for one year. Prior to this, Plaintiff had not received any indication that she was in violation of the Center's rules or policies. Plaintiff disputed the allegations and the CCSSLC did not further pursue the investigation or disciplinary action.

In September 2010, Plaintiff again spoke out at a public "Town Hall" meeting where she asserted that treatment provided to residents was being negatively affected by changes in CCSSLC policies. In particular, Plaintiff noted that Center staff members were spending a great deal of time doing paperwork as part of a Department of Justice investigation rather than working with residents who needed services. She also asserted that the Center was spending funds to train psychologists in Applied Behavior Analysis which was not useful in the CCSSLC setting because the guidelines conflicted with the intermediate care facility guidelines under which the CCSSLC operated.

In October or November 2010, Plaintiff applied for the position of Psychologist V which would have been a promotion, but she was not chosen for the position. In February 2011, Defendants Cramer and Rivera and another employee exchanged emails in which Cramer referred to Plaintiff when he said, "the more she talks (as she did to chris adams at town hall), the more I and my dept look bad." (Deposition of Robert Cramer at 9; D.E. 16-2 at 51). In May 2011, Plaintiff met with Defendants Rivera and Cazalas and a negative reference was made about Plaintiff's comments at the meeting. On September 28, 2011, Plaintiff was issued a Notice

3

of Possible Disciplinary Action signed by Defendants Rivera, Sutton, and Cazalas and two days later, she was terminated.

Plaintiff alleges that she was denied the promotion and later terminated in retaliation for having spoken out about matters of concern to the public. She alleges a cause of action under 42 U.S.C. § 1983 for violation of her First Amendment right to free speech. In their Motion for Summary Judgment, Defendants argue that several of Plaintiff's claims are barred by limitations, that the evidence in the record does not support the elements of a §1983 First Amendment violation and that they are entitled to qualified immunity.

## APPLICABLE LAW

### I. Statute of Limitations

The limitations period for a claim brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state, which in Texas is two years. *Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005). The limitations period begins to run the moment the plaintiff becomes aware that she has suffered an injury or has sufficient information to know that she has been injured. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Plaintiff filed her lawsuit on May 10, 2012. Accordingly, any claim based on a constitutional violation occurring prior to May 10, 2010 is barred by the statute of limitations.

### II. Summary Judgment Standard

Summary judgment is proper when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P 56(a). A party asserting that a fact either cannot be or is genuinely disputed must support the assertion by citing to particular parts of material in the record, or by showing that the materials

cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P 56(c).

An issue is material if its resolution could affect the outcome of the action. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). In reviewing the evidence, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached." *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001)(citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Conclusional allegations and unsubstantiated allegations may not be relied on as evidence by the nonmoving party. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 399 (5th Cir. 2008)(citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, the movant need only demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Milchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pleaded the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* A plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

### III. 42 U.S.C. § 1983 Claims

To state a claim under §1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Independent School District*, 233 F.3d 871, 874 (5th Cir. 2000). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Claims under § 1983 may be brought against persons in their individual or official capacities, or against a governmental entity. *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).

"Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (citing *Monell v. Dept. of Soc. Serv's of City of New York*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In a personal-capacity suit, the individual defendant may assert personal immunity defenses such as qualified immunity. Plaintiff in this case alleged her causes of action against the Defendants in their personal capacities.

## IV. Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complains. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no

longer mandatory. *Pearson*, 129 S. Ct. at 818 (receding from *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

For a right to be clearly established, "'the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012)(quoting *Flores v. City of Palacios*, 381 F.3d 391, 399-400 (5th Cir. 2004) and *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "'If a right is clearly established enough to impart fair warning to the [defendants], then their conduct in violating that right cannot be objectively reasonable.'" *Id.* (quoting *Willaims v. Kaufman Cnty.*, 352 F.3d 994, 1002 n. 12 (5th Cir. 2003).

## V. Freedom of Speech

A public employee may not suffer an adverse employment action for exercising his or her right to free speech under the First Amendment, even though only certain speech is protected. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Id.* (citing *Pierce v. Texas Dep't. of Crim. Justice Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). Transfers can constitute adverse employment actions if they are sufficiently punitive, or if the new job is markedly less prestigious and less interesting than the old one. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). However, actions such as decisions concerning teaching assignments, pay increases, departmental matters, and administrative procedures do not rise to the level of a constitutional deprivation. *Harrington*, 118 F.3d at 365 (citing *Dorsett v. Bd. of Trustees for State Colleges and Universities*, 940 F.2d 121, 123 (5th Cir. 1991)).

To make a § 1983 claim for retaliation based on free speech, a plaintiff employee must first show that he suffered an adverse employment action. *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). Then he must show that he spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006). Next, he has to show that his interest in the speech outweighed the government's interest in the efficient provision of public services. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Finally, he must show that the speech precipitated the adverse employment action. *Eeds*, 392 F.3d at 142.

For a public employee's speech to qualify for First Amendment protection, he must be speaking as a citizen on a matter of public concern. *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)(citing *Garcetti*, 547 U.S. at 419, 126 S.Ct. at 1958). An employee is not speaking as a citizen, but rather in his role as an employee, when he makes statements pursuant to his official duties. *Id.* (citing *Garcetti*, 547 U.S. at 421, 126 S.Ct. at 1960). When public employees make statements pursuant to their official duties, the First Amendment of the Constitution does not insulate them from employer discipline. *Garcetti*, 547 U.S. at 421, 126 S.Ct. at 1960.

In examining a claim of free speech by a public employee, the court's first task is to decide whether the plaintiff spoke as a citizen or as part of his public job. *Davis v. McKinney,* 518 F.3d 304, 312 (5th Cir. 2008). If it is determined that he spoke as a citizen, the court must next determine whether the speech was on a matter of public concern. If the speech did raise matters of public concern, the court applies the *Pickering* balancing test to determine whether the employee's interest in expressing the concern outweighed the employer's interest in promoting the efficiency of the public services it performs through its employees. *Id*. at 318.

If a plaintiff makes a prima facie case that his free speech rights have been violated, the burden shifts to the defendants to show by a preponderance of the evidence that they would have made the same decision or undertaken the same action in relation to the plaintiff even in the absence of protected conduct. *Oscar Renda Contracting, Inc. v. City of Lubbock*, 577 F.3d 264, 271 (5th Cir. 2009)(citing *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). When both parties have presented evidence on the issue of whether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against an employee, a fact question exists which ordinarily renders summary disposition inappropriate. *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992).

In Plaintiff's case, she suffered adverse employment actions during the relevant time period when she was not chosen for the position of Psychologist V and when her employment was terminated. Prior to the adverse employment actions, Plaintiff had twice spoken out in public forums about matters of public concern: in 2007 when she criticized the DADS admission policy and in September 2010 when she criticized the amount of time CCSSLC employees were doing paperwork rather than working with clients and pointed out that money was being spent on Applied Behavior Analysis training that the staff would not be able to use on residents. Defendants apparently concede that Plaintiff spoke out on matters of public concern and they do not argue that the Center's need for efficiency outweighed Plaintiff's right to speak. Thus she has made a prima facie case of First Amendment retaliation.

Defendants argue that that they were not decision-makers in either of the adverse employment actions suffered by Plaintiff. On the termination issue, Defendants further argue that if they played a role in terminating Plaintiff, her termination was justified because she had a

10

poor attendance record and had violated CCSSLC policies regarding investigation of abuse allegations.

### A. Psychologist V Position

Plaintiff submitted her application for the Psychologist V position within one or two months of speaking at the 2010 meeting. Defendant Cramer was the hiring manager who posted and interviewed candidates for the position using a panel process (Cramer Interrogatories, Ex. 4-6 to Mot. for Sum. Jmt., D.E. 16-2 at 75). Plaintiff does not assert that any other Defendants participated in the hiring decision.

Defendant Cramer contends that Plaintiff was not chosen for the Psychologist V position because her application was incomplete and because someone in the Human Resources Department inadvertently failed to process the application correctly so it was never presented to the supervisors who made the hiring decision (Email of Nov. 12, 2010, Mot. For Sum. Jmt., Ex. 7; D.E. 16-2 at 148; Cramer Depo. at 13-15, D.E. 16-2 at 55-57). However, Defendant Cramer relies on hearsay evidence by an unidentified employee of "AccessHR." (*Id.*). Summary judgment may not be based on hearsay evidence. *Fowler*, 68 F.3d at 126.

Plaintiff submitted a sworn statement attesting that she twice submitted her application to the human resources department and received confirmation that it was submitted before the closing date. She also stated that she received verbal confirmation that her application was received prior to the deadline and that it was properly completed (Carlow Decl. at 4-5; D.E. 17-1 at 6-7). Based on the evidence presented, fact questions exist which preclude summary judgment on the issues of whether Plaintiff timely and properly submitted her application and whether Defendant Cramer retaliated against Plaintiff by failing to promote her to the Psychologist V position.

Defendant Cramer also contends that he is entitled to qualified immunity. However, Plaintiff has asserted the violation of her constitutional right to free speech and public employees have a clear and long-standing right to speak out on matters of public concern without fear of retaliation. Thus, if Cramer acted with a retaliatory motive in not considering Plaintiff for the Psychologist V job, his conduct was not objectively reasonable and he is not entitled to the defense of qualified immunity.

**B. Termination**

Plaintiff also asserts that her employment was terminated in September 2011 because she had spoken out in 2007 and 2010. Defendants first argue that they did not make the decision to terminate Plaintiff, but rather the decision was made by unidentified "Human Resources employees". This assertion is not supported by the record. The Notice of Possible Disciplinary Action issued to Plaintiff on September 28, 2011 was signed by Defendants Rivera and Sutton. On page four of the notice, Defendant Rivera stated that several staff members reported to him on August 30, 2011 that Plaintiff was on Facebook for hours at a time and that he notified Defendant Sutton of the allegation. Sutton told Rivera to contact the Information Technology department for confirmation. Rivera did so and received an email in reply indicating that Plaintiff was on Facebook during work hours. Either Rivera or Sutton[1] also stated "Before I decide what disciplinary action to take, please provide me with any information that you feel is relevant in this matter." (Ex. 5-1, p. 4 to Mot. for Sum. Jmt., D.E. 16-2 at 140). Rivera and Sutton both signed the actual notice of termination on September 30, 2011 and one of them stated in the notice that he or she had met with Plaintiff and heard her response to the allegations in the letter. He or she also stated "it is my decision to terminate your employment with Corpus

---

[1] Both Sutton and Rivera signed the preliminary and final notices of termination and it is not always clear to whom the personal pronouns refer.

Christi State Supported Living Center effective immediately." (Ex. 5-2 to Mot. for Sum. Jmt.; D.E. 16-2 at 141-145). Based on the evidence in the record, a jury could conclude that Rivera and Sutton made the decision to terminate Plaintiff.

Defendants also argue that Plaintiff cannot show that her protected speech led to her termination because the last time Plaintiff spoke out at the public meeting was approximately one year before she was terminated and it is too remote in time to be considered a factor in her termination. Temporal proximity is one element in proving causality in a First Amendment retaliation case and when it is the only proof offered by the plaintiff, the timing between the protected activity and the adverse event must be very close. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-274, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001).

In the instant case, temporal proximity is not the only evidence offered by Plaintiff. Plaintiff points out that in an email sent by Defendant Cramer to Defendant Rivera and another employee five months after Plaintiff spoke out, Cramer was discussing whether to move Plaintiff to another unit when he stated, "In addition, the more she talks (as she did to chris adams at town hall), the more i and my dept. look bad. I would rather her not talk to families about how 'lacking ABA is,' how much time she spends in meetings, and how everyone is out to get her." (Ex. 2-3 to Mot. for Sum. Jmt., D.E. 16-1 at 271). At his deposition, Cramer agreed that he was referring to the remarks Plaintiff made at the September 2010 meeting and also that he believed the remarks made the Psychology Department look bad (Cramer Depo. at 8-10; D.E. 16-2 at 50-52). A jury might infer from Cramer's email and testimony that he was aware of and resented Plaintiff's remarks several months after she had made them.

Also, Plaintiff stated in her declaration that in May of 2011, she requested a meeting with Defendant Cazalas to discuss concerns she had about the workplace. At the meeting, she was

13

surprised that some of her coworkers were present, along with Defendant Cramer's assistant and Defendant Rivera. Cramer's assistant told Plaintiff that she should not have spoken out at the September 2010 Town Hall meeting and Cazalas and Rivera nodded their heads in agreement. Cazalas added that he understood why Plaintiff's coworkers would be mad at her because she had made the CCSSLC look bad (Carlow Decl., Ex. 1 to Resp. to Mot. for Sum. Jmt.; D.E. 17-1 at 9-10).

Thus, while a delay of one-year between an employee speaking out and the suffering of an adverse consequence would be too long to show causality if it were the only evidence offered, (*See Raggs v. Mississippi Power and Light*, 278 F.3d 463, 471 (5th Cir. 2002) and *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 894 (S.D. Tex. 2010)), in this case, Plaintiff has presented additional evidence that creates a fact issue on whether her termination was related to speaking out at the Town Hall meeting. Accordingly, the one-year time lapse is not dispositive of the causality issue and Plaintiff has stated a prima facie case of First Amendment retaliation based on her termination.

The burden shifts to Defendants to show that they would have terminated Plaintiff even in the absence of protected conduct. Before reaching that issue, the Court notes that Plaintiff conceded in her deposition that the only reason she named Sutton as a defendant was that she was new to CCSSLC and did not take the time to talk to Plaintiff and hear her rebuttal to the allegations (Carlow Depo. at 150; D.E. 16-1 at 152). Because Plaintiff has offered no evidence that Sutton knew about the 2010 remarks or disapproved of them, she cannot make out a First Amendment retaliation claim against her. Summary Judgment is GRANTED on Plaintiff's claims against Sutton.

Also, although Plaintiff did provide evidence from which a jury could infer that Defendant Cramer remembered and resented her remarks at the meeting long after she made them, she has not presented any evidence showing that he was involved in the decision to terminate her. Cramer stated that as of December 15, 2010, he no longer held the position of Chief Psychologist of the Director of Psychological and Behavioral Services, but worked as a Clinical Psychologist at the Center (Cramer Interrogatories, Ex. 4-6 to Mot. for Sum. Jmt.; D.E. 16-2 at 75). He further stated that he did not recall having any discussions regarding disciplinary actions taken toward Plaintiff from June 1, 2011 to December 1, 2011 (*Id.*; D.E. 16-2 at 77). Plaintiff has not pointed to any evidence in the record to contradict Cramer's assertions and therefore cannot show that he participated in her termination. Therefore, Plaintiff cannot maintain a cause of action against Defendant Cramer for his participation in her termination.

Defendant Cazalas did not sign either the Notice of Possible Disciplinary Action or the termination letter. He testified that the first notice was probably emailed to him and he was probably asked to review it, but could not say whether he actually reviewed it or not (Cazalas Depo. at 17-18; D.E. 16-2 at 17-8). However, Sutton testified that she provided the documentation to Cazalas and that he told her that the document appeared appropriate and to follow the directives of the Human Resource Department (Deposition of Judy Sutton at 19-20; D.E. 16-2 at 98-99). This evidence creates a fact issue regarding Cazalas' involvement in the decision to terminate Plaintiff.

Plaintiff has presented evidence that Defendant Rivera had a hand in her termination and that he was aware of and disapproved of her speaking out in 2010. Therefore, Plaintiff may proceed with her termination cause of action against Defendants Rivera and Cazalas.

Defendants Rivera and Cazalas argue that they would have terminated Plaintiff anyway because she was late to work or altogether absent from work 89 times between January and August 2011 and she falsified her time records.  In addition, they assert that she failed to cooperate with an internal investigation of abuse because she did not make herself available to the investigator on the first day the investigator wanted to talk to her.  Plaintiff counters that she was not late or absent 89 times and that when she was absent, she had discussed the matter beforehand with Rivera and received approval. (Ex. 5-2, pp. 1-2 to Mot. for Sum. Jmt.; D.E. 16-2 at 141-142).  Plaintiff also disputed that she refused to cooperate with the abuse investigation, but rather asked if she could meet with the investigator the following day and the investigator agreed.  When Plaintiff made herself available the next day, the investigator told her that they no longer needed to talk as the investigation was being handled by another agency (Ex. 5-2, pp. 2-3 to Mot. for Sum. Jmt.; D.E. 16-2 at 142-143).  Plaintiff disputed all of the allegations made against her in the notice of termination at the time she was terminated and continues to dispute them in this lawsuit (Carlow Decl., Ex. 1, pp. 6-7 to Resp. to Mot. for Sum. Jmt., D.E. 17-1 at 8-9).  Plaintiff's allegations raise fact issues regarding whether she would have been terminated if she had not spoken out on matters of public concern.  Accordingly, summary judgment is DENIED.

Rivera and Cazalas also assert that they are entitled to qualified immunity.  However, looking at the evidence in the light most favorable to Plaintiff, she has asserted a violation of a clearly established constitutional right and it would have been objectively unreasonable for her supervisors to terminate her for speaking out.  Consequently, Rivera and Cazalas are not entitled to the defense of qualified immunity.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (D.E. 16) is GRANTED IN PART and DENIED IN PART. Plaintiff's causes of action arising before May 10, 2010 are barred by the statute of limitations. Summary judgment is GRANTED on all claims against Defendant Sutton and she is dismissed as a defendant in this lawsuit. Summary judgment is DENIED on Plaintiff's claim that Defendant Cramer violated her First Amendment free speech rights by acting with a retaliatory motive when he failed to promote her to the position of Psychologist V. Summary judgment is also DENIED on Plaintiff's claims that Defendants Rivera and Cazalas violated her First Amendment rights when they terminated her.

ORDERED this 1st day of July 2013.

_____
**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**